# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| In re Linda A. Dzielak,<br><br>                     Debtor. | Bankruptcy No.  08-B-70499<br>Chapter 7<br>Judge Manuel Barbosa |
|---|---|

## I.  MEMORANDUM OPINION

This matter comes before the Court on the Trustee's objection to exemption, which the Debtor has only asserted in amended schedules.  The Trustee argues first that the Debtor should not be permitted to amend her schedules, and second, that even if she is allowed to amend the schedules, she does not qualify for the exemption asserted.  For the reasons set forth herein, the Trustee's objection is DENIED.

## II.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### III.   FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed a petition for protection under Chapter 7 of the Bankruptcy Code with this

Court on February 25, 2008.  The Debtor had filed for dissolution of marriage with her husband in

the Winnebago County Circuit Court on August 15, 2005, but the dissolution proceeding remained

pending as of the bankruptcy petition date.  In the Debtor's petition, she listed her marital status as

"separated," and in her Statement of Financial Affairs, she listed details of the dissolution

proceeding, including the case number, location, nature of proceeding and the fact that it was still

pending.  In her initial schedules, she listed that she had a 50% share in a house with her husband

and a 50% share in one vehicle with her husband.  She listed a claim for child support arrearage, but

did not list any other claim against her husband or any interest in any retirement plan, pension or life

insurance policy.

Although the Debtor's initial schedules listed no assets which were not fully encumbered by

a secured claim or subject to a claimed exemption, on April 10, 2008, the Trustee filed a report of

assets. On the same day, the Trustee filed an application to employ general counsel to "investigate

possible fraudulent conveyance and debtor's interest in marital property, including but not limited

to real estate and object to claims if necessary."  The Court granted the application on April 21,

2008. On August 27, 2008, the Trustee filed an application to employ special counsel "to intervene

in the [Debtor's] divorce proceedings [and] protect any interests of the Estate," since the Trustee had

concluded that there were "substantial issues of real estate and other issues of equity pending in the

divorce that may be possible for the benefit of the Estate." The motion to employ was granted on

September 3, 2008. To date, the divorce court has not yet issued a final order or judgment dividing

the marital property of the Debtor and her ex-husband.

On May 4, 2010, the Debtor filed amended schedules, listing "a contingent interest in her ex-Husband's 401(k) plan." The amendment claimed an interest of $36,000 in the 401(k) plan, noting that the division of assets and debts in the divorce case was still pending and undetermined, but "presum[ing] a 50% interest in the total account balance as of the entry of the Judgment of Dissolution which was approximately $72,000." The amended schedules claimed an exemption of $36,000 under 735 Ill. Comp. Stat. 5/12-1006. The amended schedules also listed a contingent interest or claim against her ex-husband in the amount of $35,750 in respect of a $71,000-$72,000 investment account which she claimed was dissipated by her husband shortly before the divorce case was filed. She did not assert any exemption for this claim or interest. Finally, the amended schedules also added a contingent interest of $12,000 in retroactive child support, which she expected the divorce court would enter to cover the time between the filing of the petition for dissolution and the entry of an order setting child support. The amended schedules asserted an exemption for the child support, which the Trustee does not object to.

After notice and several status hearings neither party requested an evidentiary hearing, instead opting to submit this matter on their pleadings and statements of counsel.[1] The Court takes judicial notice of all papers filed by the parties and the case docket.

---

[1] Federal Rule of Bankruptcy Procedure 4003(c), setting forth the burden of proof for objections to exemptions, "clearly permits, but does not require, a hearing." In re Yonikus, 996 F.2d 866, 873 (7th Cir. 1993).

# IV.  DISCUSSION

## A. Motion to Strike Amended Schedules

A Debtor may amend a bankruptcy schedule "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a).  However, the Seventh Circuit Court of Appeals has recognized that "[e]xceptional circumstances may prevent a debtor from amending schedules." In re Yonikus, 996 F.2d 866, 872 (7th Cir. 1993).  Thus, while the Seventh Circuit "endorses the 'permissive approach' of allowing amendment of schedules … an amendment may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditors." Id.

### i.      Bad Faith

The usual ground for a finding of bad faith is either "concealment of assets" or a debtor's "intentional and deliberate delay in amending an exemption for the purpose of gaining an economic or tactical advantage at the expense of creditors and the estate." In re Shethi, 389 B.R. 588, 598 (Bankr. N.D. Ill. 2008) (Sonderby, J.) (citing In re Icke, 2006 WL 2860809 (Bankr. S.D. Ill. 2006)). The court in Icke suggested that some form of deception or active concealment was required to constitute 'bad faith.' In re Icke, 2006 WL 2860809, at *3 (Bankr. S.D. Ill. 2006) (Altenberger, J.). Here, the Trustee has not alleged any bad faith act or concealment by the Debtor other than the failure to initially schedule her contingent interest in her ex-husband's 401(k) plan or her asserted exemption in such interest.

The Trustee argues that the Debtor's failure to schedule the asset at a minimum constituted a "reckless disregard for the truth of information furnished in the schedules and statements." However, the 401(k) plan was in the Debtor's husband's name, and funded by his salary, meaning that Mrs. Dzielak was not necessarily aware of its existence, its amount, or that she might have a claim to it. The Trustee argues that, because the petition for dissolution of marriage was filed nearly two-and-a-half years before the bankruptcy petition, she must have known of her husband's assets by the petition date. However, the mere passage of time does not necessarily mean that she was or should have been aware of the account. There is no indication of what discovery occurred in the dissolution proceedings, if the husband complied with discovery requests, or if the husband attempted to conceal assets from the Debtor. Instead, the record indicates that the husband might have hidden assets from his wife. The Debtor has alleged that her ex-husband dissipated over $70,000 in an investment account without her knowledge shortly before the petition for dissolution was filed. Also, while two and a half years might seem like a long time when taken out of context, it is now nearly five years since the dissolution proceedings were commenced, and there still has not been a final judgment entered. Moreover, the Trustee has participated in the divorce proceedings for nearly two years, but apparently just recently became aware of the husband's account. The Trustee retained special counsel who intervened in the dissolution proceedings as early as September 2008, and yet he was apparently unaware of the 401(k) plan for over a year and a half. This also seems to indicate that the existence of the retirement account was not obvious.

The Trustee has failed to demonstrate "by clear and convincing evidence" that the Debtor intentionally concealed the 401(k) plan. Instead, it appears more likely that the Debtor was not aware of the existence of the retirement account until shortly before she filed the amended schedules. She disclosed the fact that she had a pending divorce proceeding in her initial petition, and disclosed her potential interest in the car and the house which were jointly owned by her and her husband. The Trustee was not only aware of the divorce proceedings, but actually intervened in them. If the Debtor's intent was to conceal the asset or to wait until it was too late for the Trustee to do anything about it, the Debtor would have waited until after the divorce court entered a judgment to file the amendments, not before. Instead, the Debtor disclosed the retirement plan while the bankruptcy case was still open and before a final judgment was entered in the divorce proceedings.

ii.   **Prejudice**

As Judge Sonderby has stated, "in determining whether an amendment to the debtor's exemption claim causes prejudice, 'the appropriate inquiry is not whether … creditor[s] will recover less,' but whether a party – having changed its position in reliance on the original exemption claim – would be adversely affected by an amendment thereto." In re Shethi, 389 B.R. at 605 (quoting 9 L. King, *Collier on Bankruptcy* ¶ 1009.02[1] (15th ed. rev. 2007)). If recovering less were sufficient to constitute 'prejudice,' then amending a petition to claim an exemption would never be permitted, which would be in conflict with the policy of liberally permitting amendments while the case is open.

The Trustee claims he incurred additional expenses because of the Debtor's failure to timely disclose the asset or claim the exemption. He claims that he might not have hired special counsel and gone to the expense of intervening in the divorce proceedings if he knew that the Debtor was going to claim an exemption in marital property. But, the Court believes that the disclosure of the retirement account or claim of exemption would have made it even more likely, not less, that the Trustee would attempt to intervene in the divorce proceedings. For example, the Debtor did disclose the marital residence, and the Trustee admits that it was "[u]pon learning that the former marital residence … contained non-exempt equity" that he sought to intervene in the divorce proceedings. The existence of more marital assets would have been even more incentive to intervene.

Moreover, the trustee has had the opportunity to intervene in the divorce proceedings to make sure the Debtor and her ex-husband do not collude to divide marital property in a way adverse to the interests of creditors. The couple might have an incentive to divide property by having the Debtor receive all exempt property in exchange for the husband receiving all non-exempt property. But, the Trustee has intervened, and the divorce court has not yet entered a final judgment, so the creditors have not yet been prejudiced. Additionally, the Debtor has only claimed an exemption in up to 50% of the value of the 401(k) plan. The Illinois exemption statute does not have a monetary limit, so if the debtor and her husband were conspiring against the Debtor's creditors, one would expect the wife to claim an exemption in the full account. Instead, if she is awarded more than a 50% interest in the account, the excess would be available to creditors, since she only claimed an exemption of $36,000.

The Trustee also seems to argue that the Debtor has increased the Trustee's costs and wasted his time by failing to provide the information initially in the original schedules. But, this sort of argument was rejected in In re Shethi, where "the only change in position identified by the trustee relate[d] to the fees and expenses that he incurred in investigating and preparing his Objections, his motion for Rule 2004 examinations, and his issuance of subpoenas." 389 B.R. at 605. The court found that such "circumstances presented do not establish prejudice warranting a denial of the amended exemption claim." Id. at 606. As noted above, the Court believes that the Trustee would have sought to intervene in the divorce proceedings whether the Debtor had initially scheduled the 401(k) plan or not, and therefore the costs cannot be attributed solely to the failure to schedule or subsequent amendment. Nor can the mere costs incurred in objecting to the amendment be considered prejudice. If that were the case, amendments would never be permitted. A Trustee could block every amendment simply by objecting to the amendment and incurring legal expenses. Of course, there are likely situations in which incurrence of expenses could constitute prejudice, but the Trustee has not demonstrated the type or level of prejudice warranting the Debtor losing her right to amend or her right to claim an exemption to which she is entitled.

iii.    **Laches**

The Trustee also argues that the Debtor should be prohibited from amending her schedules or asserting the exemption on the theory of laches. Laches is "an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party." In re Gravemann, No. 05-B-35597, 2009 WL 4921416 (Bankr. S.D. Ill. Dec.

10, 2009) (Altenberger, J.) (citing <u>Tully v. State</u>, 143 Ill.2d 425, 432 (1991)). "The doctrine is

grounded in the equitable notion that courts are reluctant to come to the aid of a party who has

knowingly slept on his rights to the detriment of the opposing party." <u>Id</u>. "Two elements are

necessary to a finding of laches: 1) lack of diligence by the party asserting the claim and 2) prejudice

to the opposing party resulting from the delay." <u>Id</u>. For the same reasons as noted above, the Trustee

has not demonstrated that laches is appropriate.   The Trustee has not demonstrated a lack of

diligence, since he has not demonstrated that the Debtor knew or should have known of the existence

of the 401(k) plan until she filed the amended schedules.   Nor has the Trustee demonstrated that the

Trustee or any creditor has suffered prejudice from the delay.

**B.   Objection to Exemption**

**i.        Illinois Exemption**

Under Section 522(b) of the Bankruptcy Code, debtors may choose between the exemptions

provided by federal law and those provided by state law, unless a state chooses to opt out of the

federal exemption scheme. 11 <u>U.S.C.A.</u>§ 522(b) (West 2010).  Illinois has chosen to "opt out" of the

federal exemption scheme, and therefore the Debtor in this matter must utilize the exemptions

provided by Illinois law. <u>In re Laredo</u>, 334 B.R. 401, 409 (Bankr. N.D. Ill .2005) (Squires, J.). In

Illinois, "[e]xemption statutes must be liberally construed in favor of the debtor.... Where it is

possible to interpret an exemption statute either favorably or unfavorably with respect to the debtor,

the favorable method should be selected." <u>Id</u>. at 410-09 (internal citations omitted).

Neither party has argued that the Debtor's potential interest in the 401(k) plan is not property

of the estate. As the 7th Circuit Court of Appeals has noted, "every conceivable interest of the debtor,

future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." In re

Yonikus, 996 F.2d at 869. Therefore, the fact that the divorce court has not yet issued an order

distributing an interest in the property is not dispositive. The Debtor has at least a claim for, or

contingent interest in, all or part of the retirement account. Neither party has suggested that the

Debtor's interest is not property of the estate by means of Section 541(b)(7) (excluding amounts

withheld by or received by an employer for payments as contributions to certain employee benefits

plans or deferred compensation plans), Section 541(c)(2) (excluding valid spendthrift trusts), or any

other provision of the Bankruptcy Code.

Generally, "[p]roperty interests are created and defined by state law," and "[u]nless some

federal interest requires a different result, there is no reason why such interests should be analyzed

differently simply because an interested party is involved in a bankruptcy proceeding." Traveler's

Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co., 549 U.S. 443, 451, 127 S. Ct. 1199, 1205 (2007)

(quoting Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914 (1979)). The Debtor filed a petition

for dissolution nearly two and a half years before filing her bankruptcy petition. Under 750 Ill.

Comp. Stat. Ann. 5/503(e), "[e]ach spouse has a species of common ownership in the marital

property which vests at the time dissolution proceedings are commenced and continues only during

the pendency of the action." (emphasis added).[2] Marital property is defined as "all property acquired

---

[2] At least one Illinois Appellate Court has suggested that a spouse might have a recognizable property interest in the
assets of his spouse constituting marital property even before the filing of a petition for dissolution. In re Takata,
383 Ill. App. 3d 782, 890 N.E.2d 688 (Ill. App. Ct. 2008) (finding that a husband had "an actual interest in the IRA

by either spouse subsequent to the marriage," other than certain specified exceptions. 750 Ill. Comp. Stat. Ann. 5/503(a). The parties do not dispute that the 401(k) plan was acquired by the husband subsequent to the marriage and is not within any of the statutory exemptions, and therefore constitutes marital property. Since the Illinois "equitable distribution law creates statutory rights in marital property, the bankruptcy court should honor those laws unless some federal interest requires a different result." Szyszko v. Szyszko, No. 01-C-2417, 2001 WL 766905, at *2 (July 6, 2001) (Darrah, J.).

735 Ill. Comp. Stat. Ann. 5/12-1006 provides an exemption for a "debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan ... if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended."[3] There is no dispute that the 401(k) plan constitutes a valid "retirement plan" for purposes of the Illinois exemption and the Internal Revenue Code. However, the Trustee argues that, since the plan is in the ex-husband's name, the contributions were made by the ex-husband, and since the Debtor will only receive an interest in the plan through a divorce settlement or judgment, which has not yet occurred, the Debtor cannot validly assert the exemption. The Trustee's objection can be broken down into two parts: 1) that, because of its contingent nature,

---

in [his current wife's name] as it was [their] marital property," such that it was subject to turnover to the extent of such "legal interest," even though the husband and wife had not filed for divorce). The Court need not speak to rights before filing for divorce, however, since here the Debtor filed the petition for dissolution prepetition.
[3] The Debtor has not asserted an exemption under 11 U.S.C § 522(b)(3)(C) (providing an exemption for retirement funds to the extent in a fund or account exempt from taxation under section 401, or other specified sections of the Internal Revenue Code), and therefore the Court will only speak to the Illinois exemption.

the Debtor did not have a sufficient interest in the property as of the petition date to claim an

exemption and 2) that the way the Debtor obtained or will obtain her interest in the plan, through a

divorce settlement or judgment, changed the nature of the property such that the exemption does not

apply.

     ii.    **Contingent Nature of Interest**

The Trustee argues that the Debtor cannot exempt any interest in the 401(k) plan under 735

Ill. Comp. Stat. Ann. 5/12-1006 because she did not have a specific interest in the 401(k) plan, but

rather only a general claim for 'marital assets.' The Court disagrees. As stated above, under Illinois

law, "[e]ach spouse has a species of common ownership in the marital property which vests at the

time dissolution proceedings are commenced and continues only during the pendency of the action,"

750 Ill. Comp. Stat. Ann. § 5/503(e). In this way, Illinois differs from states such as Connecticut and

New York, in which "the mere commencement of a dissolution action does not create a legal or

equitable interest in either spouse with respect to the other spouse's property." Coan v. McAvoy (In

re McAvoy), No. 05-B-36352, 07-A-3070, 2009 WL 1120029, at *6 (Bankr. D. Conn. Apr. 27,

2009). This contingent interest ripens into a full ownership interest for any property distributed to

such spouse when the divorce court enters an order of distribution or final judgment. The Trustee's

argument perhaps goes too far, since if the Debtor did not have even a contingent interest in the

401(k) plan, then it would not have been property of the estate in the first place.[4]

---

[4] If a debtor does not have a sufficient interest in marital property as of the petition date, property distributed to such
debtor within 180 days post-petition by a property settlement agreement or divorce decree can constitute property of
the estate through the claw-back provision in Section 541(a)(5). However, it is now well over 180 days past the
bankruptcy petition date, and the divorce court has not entered any order of distribution.

The Court believes that Illinois courts would find that the state law exemption for retirement plans applies even if the claimant only has a contingent interest in such plan. As noted above, Illinois courts interpret their exemptions liberally in favor of debtors, In re Laredo, 334 B.R. at 409, and there is no language in the exemption indicating a legislative intent to limit the applicability of the exemption. Instead, the statute uses expansive language, referring to any "interest in" a qualified plan "whether vested or not." 735 Ill. Comp. Stat. Ann. 5/12-1006 (West 2010).

Nor does the Court believe there is any federal interest requiring a different result. It would be an odd result indeed for the Code to so broadly include interests that are contingent, unliquidated, unmatured, or disputed as of the petition date as 'property of the estate' and yet flatly exclude such interests from any exemptions. Such an asymmetric policy would conflict with the policy of liberally interpreting exemptions in favor of debtors. Therefore, for example, the 7th Circuit Court of Appeals has held that a debtor with an unliquidated and contingent Truth in Lending Act claim against a third party could apply a 'wildcard exemption' under 735 Ill. Comp. Stat. Ann. 5/12-1001(b) to exempt the claim, and that the valuation of the asset was the potential damages award times the likelihood of success as of the petition date. Polis v. Getaways, Inc. (In re Polis), 217 F.3d 899 (7th Cir. 2000). While there are cases in other jurisdictions in which the court refused to allow a debtor to apply a wildcard exemption to property owned by a spouse where the debtor's only interest was as 'marital property' because "the ownership interest necessary to support application of an exemption must be an actual property interest, not a theoretical or potential interest," In re Horstman, 276 B.R. 80, 82 (Bankr. E.D.N.C. 2002), the marital dissolution laws in those jurisdictions did not create a contingent

interest upon the filing of a petition for dissolution. See, e.g., Horstman, 276 B.R. at 83 (noting that

under North Carolina law the right to distribution of marital property "does not ... create a property

right in the marital property"); In re Johnson, 210 B.R. 153 (Bankr. D. Minn. 1997) (while the

Minnesota divorce statute creates "a common ownership in marital property," such interest "vests

*not later than* the time of the entry of the decree," rather than at the filing of the petition for

dissolution). Illinois' divorce statute is different by vesting an interest in marital property upon the

filing of the petition for dissolution, and the Illinois retirement plan exemption statute differs in

applying to any interest in a plan, rather than just a full property interest. Therefore, the Illinois law

is closer to Ohio law, in which courts have held that "upon the commencement of the divorce

proceeding" a debtor "obtained an interest in the Retirement Plan" and "the debtor-wife could

exempt her interest in the 401(k) plan even though her interest was contingent on the petition date."

In re Street, 395 B.R. 637, 643-644 (Bankr. S.D. Ohio 2008) (citing In re Greer, 242 B.R. 389

(Bankr. N.D. Ohio 1999)).

### iii.   Purported Change in Nature of Interest in Property

While a debtor can claim an exemption in a contingent interest, such exemption can apply

only if the contingency ultimately occurs. Therefore, the Debtor can claim the exemption now, but

it will only apply to property if it is actually awarded to her in the divorce proceedings. A debtor

cannot apply an exemption for property she is not awarded to property she is awarded. For example,

if a couple's marital property consists of a house and a car, and the wife is awarded the house and

the husband the car, the wife cannot apply an automobile exemption to the house. Although the

divorce court might have considered the value of the car in making its equitable determination to

grant the wife the house, the house cannot be considered the 'proceeds' of the car.[5]  In a similar way,

a debtor claiming an exemption must herself have a right to claim the exemption.  She cannot claim

a non-debtor spouse's exemption, even if they both hold an interest in property.  Thus, in upholding

an objection to a debtor's claimed exemption in 'workers' compensation benefits' received through

a divorce settlement, the bankruptcy court for the Central District held, "the DEBTOR has no right

to claim an exemption in those benefits under [820 Ill. Comp. Stat. Ann. 305/21], notwithstanding

her right to receive a portion of those benefits, as marital property under the judgment of dissolution.

The exemption is personal to the Debtor's non-filing former spouse and, absent an independent right

of exemption, cannot be claimed by her in this bankruptcy proceeding."  In re Barlow, No. 95-81817,

1996 WL 33401179 (Bankr. C.D. Ill. Jan. 23, 1996) (Altenberger, J.).

The Trustee argues that the Debtor cannot assert the retirement plan exemption because what

she will receive is not a 'retirement plan' in her hands, and that she is trying to assert her ex-

husband's exemption.  The Trustee relies on language in our ruling in In re Johnson, affirmed by

Judge Kapala in Johnson v. Natale, No. 07-C-50204 (N.D. Ill. Jan. 22, 2008), where we held that a

spouse's interest in his ex-wife's workers' compensation claim, obtained through a marital

---

[5]An additional issue is whether 'proceeds' of marital property would be covered by an exemption for property
ordered to be sold by the divorce court.  Under 750 Ill. Comp. Stat. Ann. 5/503(i), the divorce court may "make such
judgments affecting the marital property as may be just and may enforce such judgments by ordering a sale of marital
property, with proceeds therefrom to be applied as determined by the court."  Even though an exemption statute does
not refer to proceeds, the "concept of tracing is part of Illinois law even where the exemption statute does not
specifically provide for it."  In re Irwin, 371 B.R. 344, 346 (Bankr. C.D. Ill. 2007) (Gorman, J.) (citing Auto Owners
Insurance v. Berkshire, 225 Ill. App. 3d 695, 700, 588 N.E.2d 1230, 1234 (Ill. App. Ct. 1992)).  However, while the
revenue from property sold to a third party by court order might constitute proceeds, where a court merely awards
certain property in lieu of other property, it is difficult to characterize the distributed property as 'proceeds' of
property that the ex-spouse would still retain.

settlement agreement "now is not worker's compensation to compensate the injured party, but rather a property interest, which is being used to satisfy a marital property obligation." However, there are differences between the language and policy of the workers' compensation exemption and the retirement plan exemption, as well as potential factual differences in the marital settlement agreements, that distinguish Johnson from the current case.

The workers' compensation exemption at issue in Johnson and In re Barlow is provided in 820 Ill. Comp. Stat. Ann. 305/21, which states, "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages...."[6] Each court found that the debtor's right to payment under the settlement agreement was not a "payment, claim, award or decision" under the Workers' Compensation Act. In Barlow, the final judgment of dissolution stated that the debtor's former husband "was ordered to 'pay to the wife a sum equal to 20% of his net worker's compensation settlement, if any, at the time he receives the same.'" In re Barlow, 1996 WL 33401179, at *1. In other words, it was an obligation of the husband to pay a monetary amount to his ex-wife. There was no indication that the workers' compensation claim itself was transferred to the wife, or that the employer (or such employer's insurance provider or the issuer of any annuity), was obligated to make payments to the debtor. Similarly, in Johnson, the marital settlement agreement simply provided that "Once resolved, HUSBAND will receive ½ of WIFE'S settlement to her." While this language was less clear than that in Barlow, again, there was no indication that the actual claim itself was

---

[6] Although the statute does not specifically use the term 'exempt' or 'exemption,' courts in this district have found that the statute effectively exempts workers' compensation benefits from judgments of creditors and constitutes an 'exemption' for bankruptcy purposes. In re McClure, 175 B.R. 21, 23-24 (Bankr. N.D. Ill. 1994) (Wedoff, J.).

transferred to the debtor spouse, that such spouse would have standing to pursue the claim, or that

the employer would be obligated to make payments to such spouse. There is Illinois case law

holding that a spouse who receives an award "as the only dependent left surviving by the [injured

party], deceased" may claim the exemption. Weber v. Ridgway, 212 Ill. App. 159, 1918 WL 2017,

at *3 (Ill. App. Ct. 1918). However, the court's decision was based on the fact that the award was

made directly to the surviving spouse. Id. ("We think, under the provisions of said statute, that

inasmuch as this award was made directly to Vera Weber and is made up from funds derived from

said award, it would not be subject to garnishment."). Under Weber it is likely that a spouse or child

who inherited the award could claim the exemption, since the Workers' Compensation Act contains

provisions expressly making a surviving spouse or children beneficiaries of settlement awards upon

the death of the injured spouse, 820 Ill. Comp. Stat. Ann. 305/8(h). However, it is doubtful that a

spouse who obtained the payment right under a dissolution order would also obtain the right to claim

the exemption. The Illinois Supreme Court has stated clearly that a "workers' compensation award

constitutes marital property [if] the claim accrued during the marriage of the parties." In re

Derossett, 173 Ill. 2d 416, 671 N.E.2d 654 (Ill. 1996) (upholding trial court's award of 30% of

workers' compensation settlement to wife). However, the only Illinois court to explain why such

an award would not conflict with the anti-alienation provision in 820 Ill. Comp. Stat. Ann. 305/21

explained:

> we are not assigning the claimant's award, or any portion thereof, to the non-injured
> spouse. We are merely directing trial courts, when equitably apportioning the marital
> property of the parties under section 503 of the Illinois Marriage and Dissolution of
> Marriage Act (Ill.Rev.Stat.1977, ch. 40, par. 503), to treat as marital property the
> workmen's compensation award of an injured spouse, provided the award arose out

> of a claim accruing during the marriage. Equitable distribution of marital assets
> pursuant to dissolution proceedings is not tantamount to an assignment. These are
> two distinct and separable legal concepts. Respondent's characterization of equitable
> apportionment of marital property as an assignment blurs these distinctions, and is
> not sound. Accordingly, we reject his assertion that classification of a compensation
> award accruing during the marriage as marital property violates the non-assignability
> provision of section 21 of the Workmen's Compensation Act.

In re Thomas, 89 Ill. App. 3d 81, 84, 411 N.E.2d 552, 554 (Ill. App. Ct. 1980). If a divorce court

does not have the power to actually assign the workers' compensation award itself, but rather is

simply considering the award in making its equitable division of marital property or, at most,

assigning the ex-spouse's interest in the benefits of the award as he receives them, then the award

could not be said to be made "directly to" the debtor spouse under Weber. If the award itself is not

transferred to the debtor, then the exemption would not apply, first, because the contingent interest

in the award never ripened, and second, because what the debtor ultimately receives is not a

"payment, claim, award or decision" under the Workers' Compensation Act, as required by the

statute. Instead, it would be a payment or obligation of the ex-spouse alone under the dissolution

judgment.

A 401(k) plan, like workers' compensation benefits, constitutes marital property if "earned

during the course of the marriage." In re Jamieson, 379 Ill. App. 3d 100, 104, 882 N.E.2d 1121,

1225 (Ill. App. Ct. 2008). However, unlike workers' compensation benefits, a divorce court has the

power to fully transfer or assign a retirement plan itself. The anti-alienation provisions for qualified

retirement plans under ERISA or the Internal Revenue Code, as applicable, expressly allow a divorce

court to assign retirement benefits through a 'qualified domestic relations order.' Id., 379 Ill. App.

3d at 103, 882 N.E. 2d at 1224 ("[I]n a divorce or dissolution of marriage proceeding, ERISA

Page 18 of 21

permits a state court to enter a QDRO which recognizes the existence of an alternate payee's right

to receive a portion of the participant's retirement benefits as marital property.") (citing 29 U.S.C.

§ 1056(d)(3)(A), (d)(3)(B)(i)); see also 26 U.S.C. § 401(a)(13)(B).  Here, the divorce court has not

yet entered an order of distribution, so it is too soon to tell if it will enter a qualified domestic

relations order transferring all or a portion of the retirement plan to the Debtor.  However, at issue

today is only whether the Debtor has the right to assert an exemption in the still-contingent interest,

and not whether the contingency has occurred or whether certain property in the hands of the Debtor

constitutes the property for which the exemption was claimed.[7]  The Debtor has a right to claim an

exemption at least in the plan itself, and that is all she has done.

An additional difference between workers' compensation benefits and retirement plans is that

the exemption language for retirement plans is broader than the anti-alienation language in the

workers' compensation statute.  For example, in one bankruptcy court case from the Southern

District, the court noted that "the language of § 12-1006(a) [is] unequivocal in protecting **any**

interest a debtor may have in the assets of a pension or retirement plan and **any** right to receive

benefits, distributions, or other payments under such a plan."  In re Lummer, 219 B.R. 510, 512

(Bankr. S.D. Ill. 1998) (Meyers, J.).  In Lummer, the court held that the Illinois exemption statute

applies to retirement plans whether the interest holder earned the interest though his own labor or

obtained the rights derivatively, and therefore a spouse who received a partial interest in a military

pension earned by her husband and transferred to her pursuant to a divorce judgment prepetition

---

[7] Such an issue could arise in the context of a motion for turn over, if the divorce court assigns something other than
an interest in the retirement plan but the Debtor refuses to turn such property over, claiming it constitutes 'proceeds'
of the exempt plan.

could assert the exemption.  In contrast to workers' compensation benefits, the key to the exemption

for retirement plans is how the assets are held, not their initial source.  The purpose behind the

exemption for retirement plans is the "desire to preserve funds so they will be available to support

a person in retirement." Johnson, No. 07-C-50204 (N.D. Ill. Jan. 22, 2008).  To qualify for the

exemption, the retirement plans must be held in "a trust or equivalent arrangement" which is

segregated and "cannot be reached by the participant without significant penalty" prior to reaching

the appropriate age or requirements. Id. (citing In re Schoonover, 331 F.3d 575, 577 (7th Cir. 2003)).

Since, as the court in Lummer held, the initial source of the retirement funds is not relevant to the

exemption, a qualified retirement plan qualifies for an exemption whether in the hands of the

husband or in the hands of the wife.  Therefore, if the divorce proceedings had been complete prior

to the petition date, the Debtor could have claimed an exemption in the 401(k) plan if she received

it pursuant to those proceedings.  As stated above, the contingent nature of the interest as of the

petition date does not change the result.

## V.   CONCLUSION

A divorce court has the power to distribute all or part of the retirement plan to the Debtor

pursuant to a qualified domestic relations order.  If such plan is in fact transferred to her she would

be able to exempt it.  That is all she has purported to claim an exemption for, and the contingent

nature of the interest does not change the result.

Therefore, the Trustee's objection is DENIED.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.


DATE: <u>August 11, 2010</u>

The Honorable Manuel Barbosa
United States Bankruptcy Judge